**NATIONAL LAND & INVESTMENT COMPANY,** Properties Investment Corp., Nathan Alexander, Martin G. Bergman, Sylvan M. Cohen, Wentworth P. Johnson, Morris A. Kravitz, Marvin Orleans, Raymond G. Perelman, Herman E. Robinson, David H. Solms, Jack L. Wolgin, Norman Wolgin and William Wolgin, Appellants in Nos. 18320–18333,

v.

Arlen SPECTER, Richard Sprague and Gilbert Stein.

Nos. 18320–18333.

United States Court of Appeals, Third Circuit.

Argued April 6, 1970.

Decided June 25, 1970.

Rehearing Denied July 20, 1970.

---

Before SEITZ, and ALDISERT, Circuit Judges, and LATCHUM, District Judge.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

In these appeals from the denial of a motion for a preliminary injunction, we are asked to decide whether the district court erred in refusing to enjoin state grand jury proceedings which allegedly impinged appellants' constitutional rights.

Appellants are National Land & Investment Company, the redeveloper of Centre Square Project in downtown Philadelphia, its principal owner, Properties Investment Corporation, and the named individuals who are both shareholders in Properties Investment and directors of National Land. They have been the subjects of an investigation undertaken by the district attorney of Philadelphia and, at his instance, conducted by a special grand jury. Charging the district attorney and members of his staff with "misuse" of the grand jury to brand them "as criminals and deprive them of their constitutional rights," appellants instituted an action under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and its jurisdictional corollary, 28 U.S.C. § 1343(3), for injunctive and declaratory relief. This appeal followed immediately upon the district court's refusal to grant the request for a preliminary injunction, and that refusal is therefore, the exclusive issue now before us.

Early in 1969, District Attorney Specter began investigating appellants' Centre Square Project. On March 31, 1969, he filed a petition in the Court of Common Pleas for the convening of an Investigating Grand Jury, alleging that there was reason to believe the existence of "systematic criminal conduct involving public officials and agencies, not amenable to ordinary investigative techniques." Although the petition called for the investigation of various unrelated matters, it recited that, in connection with the Project, the district attorney had "reliable and trustworthy in-

Harold E. Kohn, Dilworth, Paxson, Kalish, Kohn & Levy, David H. Marion, Barney B. Welsh, Louis J. Goffman, Raymond J. Bradley, Philadelphia, Pa., for appellants.

Arlen Specter, Dist. Atty., John Rogers Carroll, Asst. Dist. Atty., James D. Crawford, Deputy Dist. Atty., Chief, Appeals Division. Philadelphia, Pa., for appellees.

formation" that certain officials had given away city property and assets, officials had relieved National Land of certain legal obligations in order to enrich appellants, and, according to charges by a member of the Philadelphia Planning Commission, members of the City Redevelopment Authority were guilty of conflicts of interest. The petition was granted on April 2 and the grand jury was convened and charged.

Certain of the individual appellants were subpoenaed to appear and testify before the grand jury. Consistent with rules promulgated by the presiding judge, they were not permitted to have counsel present during their testimony and were prohibited from leaving the grand jury room to consult with counsel concerning questions asked of them. If, however, a witness declined to answer any question and was summoned before the court for an order compelling a response, he was, at that time, permitted to consult with counsel. None of appellants refused to answer any questions.

The local news media accorded extensive coverage to the grand jury proceedings. Appellants insist that the district attorney's office intentionally generated adverse publicity by " '[leaking]' damaging information to the press in order to discredit and * * * intimidate [them] and any others who might contemplate political opposition to [District Attorney] Specter." Appellants Cohen and Wolgin are described in their brief as being "permanently identified as supporters of political opponents of * * * Specter in his unsuccessful campaign for Mayor of Philadelphia in 1967 and his successful campaign for re-election to the office of District Attorney in 1969." In retort, appellees contend that appellants themselves used the press as a forum for the presentation of "their views of the investigation, the Grand Jury and all related matters including the substance of their testimony."

After the grand jury was convened, the district attorney's office forwarded letters to thirteen banks and financial institutions which had agreed to provide financing for the Project, stating that the grand jury was investigating "alleged criminality" and indicating that their testimony might be required. Appellants assert that this correspondence, combined with the unfavorable publicity caused by the proceedings, resulted in the refusal of the prospective lenders to honor their financing commitments. In September, 1969, National Land was unable to go to closing on the financing.

Following the filing of the present action in federal district court, and the denial of the motion for a preliminary injunction, the Investigating Grand Jury filed a presentment summarizing its investigation of the Project and recommending indictment of National Land, appellant Cohen, and an officer of National Land. The regular October Grand Jury of Philadelphia County returned indictments against these parties, charging them with conspiracy and fraud. Since that time, the grand jury proceedings have halted, but although the investigation of appellants is not now ongoing, the proceedings presumably can be resumed at any time before the dissolution of the grand jury. This, together with the fact of the indictments and appellants' prayer that the prosecution of any such indictments be enjoined, convinces us that this appeal is not moot.

At the onset, we note that the district court correctly determined that it was possessed of equitable jurisdiction to issue the requested injunction, despite the provision of 28 U.S.C. § 2283:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

As this court recently declared in De-Vita v. Sills, 422 F.2d 1172 (3 Cir. 1970), appellants' reliance on the Civil Rights Act, 42 U.S.C. § 1983, "as an instance of an injunction 'expressly authorized

by Act of Congress'", and, therefore, as an exception to the anti-injunction provision of § 2283, "is, in this circuit at least, well-placed, for Cooper v. Hutchinson, 184 F.2d 119 (3 Cir. 1950) so holds." To be sure, other circuits have taken a contrary position, Baines v. City of Danville, 337 F.2d 579, 590 (4 Cir. 1964); Sexton v. Barry, 233 F.2d 220 (6 Cir. 1956); Smith v. Village of Lansing, 241 F.2d 856 (7 Cir. 1957), but the Supreme Court has not yet deemed it necessary to resolve this conflict among the circuits. Dombrowski v. Pfister, 380 U.S. 479, 484, 85 S.Ct. 1116, 14 L.Ed.2d 22 n. 2 (1965). We therefore reiterate our statement in DeVita, supra: "We are satisfied that no opinion of the Supreme Court casts serious doubt upon the validity of the interpretation of 28 U.S.C. § 2283 adopted in Cooper v. Hutchinson, *supra*."

Recognizing that the district court had equity jurisdiction to grant the relief sought, we must decide whether that court properly refused to preliminarily intervene in the state proceedings. We begin with the proposition that disposition of the request for a preliminary injunction was peculiarly within the discretion of the district court. It is for us to determine only whether there has been an abuse of that discretion, whether there was an error of law or whether a clear mistake was made in the consideration of the proof. Stokes v. Williams, 226 F. 148 (3 Cir. 1915), cert. denied, 241 U.S. 681, 36 S.Ct. 728, 60 L.Ed. 1234 (1916). Whether appellants demonstrated the irreparable harm or reasonable probability of success on final hearing necessary to the issuance of a preliminary injunction is a question of law that does not have "an existence independent" of findings of fact. See United States v. Yellow Cab Co., 338 U.S. 338, 339, 70 S.Ct. 177, 94 L.Ed. 150 (1949). And it is fundamental that we, as an appellate tribunal, "must accept the findings of fact of the trial judge unless there was clear error in the fact finding process." Allis-Chalmers Mfg. Co. v. White Consolidated

Indust., Inc., 414 F.2d 506, 528 (3 Cir. 1969) (dissenting opinion). Rule 52(a), Fed.R. Civ.Pro.

The court below appeared to rest its decision on two grounds: the preliminary injunction was denied because appellants had "not demonstrated irreparable harm," and because "abstention and comity require [the] use [of] extreme diligence in determining equitable relief" which would interrupt state proceedings. Because we agree that appellants failed to demonstrate irreparable harm, and thus did not establish a case for preliminary equitable relief, we do not directly reach the issue of abstention.

Appellants contend that the special grand jury was used by appellees "as an instrument of political revenge and unconstitutional repression of free speech and political opposition, expression and association." That the grand jury was convened to investigate appellants, so the argument runs, in itself effectively repressed those who were political foes— that is, the convening represented a bad faith use of the state's legal machinery, resulting in an unconstitutional "chilling" of appellants' rights. Appellants assert that this alleged injury was continued, and exacerbated, by the investigation, and that appellees persisted, during this period, in harassing and intimidating them in the exercise of their rights.

These accusations are serious indeed. Abuse of process by the public's legal officer is nothing less than an abuse of the public trust. The office of the district attorney is charged with the duty of prosecuting legal offenders, not persecuting political opponents, with protecting the public, not purging public detractors. But, on the record before us, there is no convincing evidence of such official misconduct.

With respect to the basis for convening the grand jury, the district court found:

The evidence does show that * * * the District Attorney was without information concerning several impor-

tant aspects of the areas he was investigating; but this lack of information resulted from the fact that the plaintiffs * * * had declined to provide him with the information he needed to determine whether his investigation should be continued or not. In any event, the impaneling of the Grand Jury was sanctioned by the Common Pleas Court, and the members of the Grand Jury so convened have seen sufficient cause to continue the investigation.

We have no reason to disagree with the lower court's finding that the investigation was not undertaken in "bad faith, without any expectation of ultimately indicting or prosecuting any of the [appellants]." Indeed, following the denial of the motion for a preliminary injunction, and prior to this appeal, the Investigating Grand Jury recommended, and the regular grand jury returned, indictments against both National Land and one of the individual appellants.

Neither have we been persuaded that the investigation proceedings stilled appellants' speech or stymied their political activities. Again, as the district court found, we are unable to perceive any limitations on appellants' rights of free expression, save for "those imposed by the law relating to secrecy of the Grand Jury proceedings," and are not convinced that they "have been prevented from speaking with regard to their position in relation to the Grand Jury investigation, or with regard to political candidates of their choice."

 The mere invocation of the First Amendment—the stark assertion that rights of free expression and association have been denied—is not sufficient to support a demand for injunctive relief interfering with state proceedings brought in good faith. It is axiomatic in our jurisprudence that federal courts should refuse "to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear and imminent." Douglas v. City of Jeannette, 319 U.S. 157, 163, 63 S.Ct. 877, 881, 87 L.Ed. 1324 (1943). Appellants have simply failed to show that they have been denied their rights of free speech and political association. Thus, they have demonstrated no irreparable harm and have not established an entitlement to preliminary equitable relief.

Appellants further contend, however, that the denial of constitutional safeguards during their testimony before the grand jury should be the basis for a preliminary injunction. Their primary objection is to the procedure that excluded counsel from the grand jury room and prohibited the witnesses from leaving the room to consult with counsel during the course of testimony. The absence of counsel, say appellants, critically impaired their ability to knowledgeably invoke the privilege against self-incrimination.

In ruling against appellants on these issues, the district court made it clear that it conceived the function of the special grand jury to be basically investigatory. Thus it quoted In re Groban, 352 U.S. 330, 332, 77 S.Ct. 510, 512, 1 L.Ed.2d 376 (1957): "A witness before a grand jury cannot insist, as a matter of constitutional right, on being represented by his counsel, nor can a witness before other investigatory bodies." In addition, the district court set forth the Supreme Court's language in the recent case of Jenkins v. McKeithen, 395 U.S. 411, 430, 89 S.Ct. 1843, 1853, 23 L. Ed.2d 404 (1969): "[T]he grand jury * * * need not provide all the procedural guarantees alleged by appellant to be applicable to the Commission. As this Court noted in *Hannah* [Hannah v. Laiche, 363 U.S. 420, 80 S.Ct. 1502, 14 L. Ed.2d 1307] 'the grand jury merely investigates and reports. It does not try.' 363 U.S. at 449, 80 S.Ct. 1502. * * * [T]he grand jury is designed to interpose an independent body of citizens between the accused and the prosecuting attorney and the court. See Stirone v.

United States, 361 U.S. 212, 218, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). * * *"

We do not share the apparent certainty of the court below that the special grand jury here performed the typical and traditional functions contemplated by the Supreme Court's decisions in *Groban, Jenkins,* and related cases. There are strong suggestions that this body, convened upon petition of the district attorney to examine the activities of designated groups and individuals, including appellants, at least combined with the investigatory function certain accusatory rites. We are not convinced that this grand jury was "designed to interpose an independent body of citizens between the accused and the prosecuting attorney and the court." Jenkins v. McKeithen, *supra.* Certainly it did not perform in the traditional manner, whereby "the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning." Blair v. United States, 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919).

■ By expressing these concerns, however, we do not mean to equate this investigating grand jury with the executive investigating commission in Jenkins v. McKeithen. There are differences between the two bodies both in their composition and functions. But even assuming that during the proceedings entitlement to certain procedural safeguards was indicated, we must decline appellants' invitation to enjoin any future grand jury proceedings and to declare unlawful and preliminarily enjoin the prosecution of the indictments which have already been returned. Again we emphasize the elementary principle that a preliminary injunction shall not issue except upon a showing of irreparable injury. And again we find that appellants have failed to establish the existence of such harm.

■ We recognize that "it is now universally conceded that a witness may be impeached in any subsequent trial

* * * by self-contradictory testimony given by him before tthe grand jury * * * [and] the admissions of a party * * * are admissible against him although he does not take the stand at the trial." 8 Wigmore, Evidence § 2363. See Meshbesher, Right to Counsel Before Grand Jury, 41 F.R.D. 188, 190–91 (1966). But this rule assumes, of course, that the testimony was not attended by procedural irregularities of constitutional proportion, for if the admission or other inculpatory statement was given at a "critical stage" without the presence of counsel, the statement is not admissible. White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963). As indicated above, we do not decide whether the grand jury proceeding was a "critical stage." Whether the presence and assistance of counsel was required, and whether other procedural guarantees applied are questions that may be raised by appellants in defense to any criminal prosecutions that may follow. See Mattox v. Carson, 424 F.2d 202 (5 Cir., March 25, 1970).

In Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951), the federal courts were asked to intervene in a state prosecution which had already been instituted. The petitioners sought to prevent the admission at trial of the fruit of an allegedly unlawful search. Although in the present case only two of appellants have been indicted, what Mr. Justice Frankfurter said in *Stefanelli* is applicable generally to the situation before us:

The consequences of exercising the equitable power here invoked are not the concern of a merely doctrinaire alertness to protect the proper sphere of the States in enforcing their criminal law. If we were to sanction this intervention, we would expose every State criminal prosecution to insupportable disruption. Every question of procedural due process of law—with its far-flung and undefined range—would invite a flanking movement against the system of State courts by resort to the federal forum. * *

We have no cause to believe that the state courts of Pennsylvania will refuse to accord appellants the full complement of constitutional rights if and when the alleged deprivations at the grand jury proceedings become the bases for criminal prosecutions. Far from being "irreparable", the injuries complained of can be cured at that time.

■ Appellants have pressed yet a third ground for the issuance of a preliminary injunction. They urge that the investigation is depriving them of property without due process of law since it "has resulted in the refusal by [the] lenders to proceed with their financing commitments, thus delaying and in all probability destroying the Project." Considerable attention has been devoted by appellants' Brief to disputing the disputing the district court's finding that the Civil Rights Act "was not intended as a basis for redress of property or monetary rights." We confess a strong reluctance to rule on this issue, for we think the district court was correct in deciding that appellants have not satisfied their burden of establishing "the probability of substantial[ly] direct, immediate, and irreparable harm to their project." Our agreement with this finding is, of course, dispositive of the request for an injunction based on alleged deprivations of property rights. Appellants further insist, however, that the district court's erroneous rulings rendered it impossible for them to show the existence of irreparable injury to property. And although we have considered each of their detailed objections to the lower court's conduct of the case and find no reversible error, still we think that this additional allegation, which is not frivolous, provides us with a sufficiently weighty reason to consider the broader issue of the Civil Rights Act coverage.

Not since its decision in Hague v. C.I.O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), in which five Justices filed opinions, none of which commanded a majority, has the Supreme Court engaged in a detailed discussion of the scope of 42 U.S.C. § 1983 and its jurisdictional implementation, 28 U.S.C. § 1343(3). It was the opinion of Mr. Justice Stone, joined by Chief Justice Hughes and Mr. Justice Reed, that contained the theory, posited by the lower court, that the Act was designed to protect only rights or immunities of personal liberty and not property rights.

The conclusion seems inescapable that the right conferred by the [Civil Rights] Act of 1871 [42 U.S.C. § 1983] to maintain a suit in equity in the federal courts to protect the suitor against a deprivation of rights or immunities secured by the Constitution, has been preserved, and that *whenever the right of immunity is one of personal liberty, not dependent for its existence upon the infringement of property rights, there is jurisdiction in the district court under* [28 U.S.C. § 1343]. * * *

*Id.* at 531–532, 59 S.Ct. at 971. (Emphasis supplied.)

This conclusion seemed "inescapable" because it was the only result which, in Mr. Justice Stone's view, would harmonize "two parallel provisions" of separate jurisdictional acts: in 1875 the predecessor to 28 U.S.C. § 1331 established federal question jurisdiction extending to all suits "arising under the Constitution or laws of the United States" (by its terms applying to § 1983 actions), but required that the controversy involve a specified minimum sum of money; § 1343, however, does not contain the requirement of a jurisdictional minimum in § 1983 suits. Mr. Justice Stone was concerned that neither provision should eclipse the other—that is, that § 1331 would not, by demanding the presence of a minimum amount in controversy, defeat the jurisdictional grant of § 1343 and thus emasculate the protection afforded by § 1983, and conversely, that the federal question statute would not be eroded by permitting all actions arguably contemplated by § 1983 to proceed in the absence of the monetary limitation created by § 1331. Designed to eliminate either incongruity and to reconcile the

two provisions, the Stone approach would dispense with the necessity of alleging a minimum amount in controversy in those § 1983–§ 1343 actions involving affronts to personal rights or liberties that simply cannot be assigned a monetary value.

To be sure, even if § 1343 were construed to encompass all due process and equal protection violations—including those solely of property rights—attributable to the acts of state officers, "section 1331 would still remain in effect because 1343's application is limited to suits brought to redress unlawful state action pursuant to 1983. * * * Federal question jurisdiction under 1331 would still be required for suits against federal officials." Comment, *Section 1343 of Title 28—Is the Application of the "Civil Rights-Property Rights" Distinction to Deny Jurisdiction Still Viable?* 49 Boston U.L.Rev. 377, 384 (1969). That this is true, however, strengthens rather than debilitates the Stone position. We would experience great conceptual difficulty with the proposition that, by virtue of abolishing altogether the jurisdictional amount in § 1343 cases, federally-created rights could be more readily vindicated in a federal forum if the alleged incursion were perpetrated by state officers rather than by federal officials. In this area of the law, ease of access to the federal courts should, as Mr. Justice Stone perceived, turn on the nature of the right to be protected, not on the source of the deprivation of the right.

We understand, of course, that the very purpose of § 1983 was to protect federal rights against state intrusion, that the jurisdictional amount requirement of § 1331 has been substantially restricted, see Wright, Law of Federal Courts (2d Ed.) 108, and that the American Law Institute has called for the abolition of the requirement in all federal question controversies, ALI Study of the Division of Jurisdiction Between State & Federal Courts, Tent. Draft No. 4, Append. B, 200 (1966). The Administrative Conference of the United States

has adopted a resolution to abolish the requirement in suits in which injury under color of federal law is alleged. 37 U.S.L.W. 2460 (Feb. 11, 1969). But even though the importance of a jurisdictional amount has been diluted in cases involving federal rights, we think it necessary that the jurisdictional statutes as presently constituted be reconciled, and we believe that the Stone formulation continues to represent the most persuasive rationale for effecting the reconciliation.

In Eisen v. Eastman, 421 F.2d 560 (2 Cir. 1969), plaintiff alleged only a loss of money—a deprivation of property without due pocess—and attempted to present the Civil Rights Act as his passport to the federal courts. Noting the criticisms of the Stone approach, see *e. g.* Note, *The Proper Scope of the Civil Rights Act,* 66 Harv.L.Rev. 1285, 1289–91 (1953), and examining the problem in some depth, Judge Friendly concluded:

> [T]here seems to be something essentially right about [the Stone construction], especially if one accepts, as we do, his premise that the overlap 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3) should be explained in some rational way. It has the merit of preserving not only the kind of case that was at the core of the congressional concern in 1871 but a good many others that Congress would probably desire to have within the statute, while at the same time excluding cases that neither the Reconstruction Congress nor later Congresses could really have had in mind.

Without professing absolute certainty about the matter, we, too, are inclined toward the Stone view that the Civil Rights Act was not designed to support a cause of action, the "gist" of which is damage or injury to property. Hague v. C.I.O., *supra,* 307 U.S. at 531, 59 S.Ct. 954 (Stone, J.). We doubt that Congress ever intended that a corporation and its stockholders should be able to invoke § 1983 and its jurisdictional counterpart to enjoin state investigative and criminal proceedings, based on the inde-

pendent and separate allegation that the success of a business venture is being threatened or impaired. Of course, this is not to say that an allegation of a personal vendetta by an elected public official to stifle his political opponents by injuring their business enterprises would not, under proper proof, state a claim under the Civil Rights Act. But even viewing appellants' apparently separate claim of injury to property as part of a wider charge that this injury was intended to, and did, burden them in the exercise of their constitutional rights, such claim as not been substantiated. See the discussion and disposition of appellants' First Amendment allegations, *supra.*

We have already registered our conviction that the district court was justified in finding insufficient evidence of irreparable injury to property rights to warrant the issuance of a preliminary injunction. The President of National Land did testify that he believed the financing for the Project was being delayed because one of the participants refused to go to settlement while the investigation by the grand jury continued. But even accepting this as true, and accepting the finding that the financing was interdependent, we are driven to the conclusion reached by the district court, that

> [appellants] did not demonstrate * * what the consequences of this delay would be. The same witness expressed some apprehension that a proposed tenant of the project might no longer be bound by the existing lease agreement if construction were not completed by late 1971, but he seemed uncertain about whether there was a term in the existing lease providing for a two-year grace period in the event of circumstances beyond the landlord's control.

Once again appellants have provided us only with conclusions and not with credible evidence showing the nature and extent of the alleged injury. Although they "may be sustaining some inconvenience and loss", Outdoor American

Corp. v. City of Philadelphia, 333 F.2d 963, 966 (1964), "it does not appear from the record that [they] have been threatened with any injury other than that incidental to every criminal proceeding brought lawfully and in good faith." Douglas v. City of Jeanette, *supra,* 319 U.S. at 164, 63 S.Ct. at 881.

We repeat, too, that appellants were afforded a full and fair opportunity, in the context of a hearing on their motion for a preliminary injunction, to establish their right to preliminary equitable relief. But we hasten to add that "there has been no final hearing" and that "the facts, after final hearing, * * may appear of different substance and texture and possess very different legal effects." United States v. Ingersoll-Rand Co., 320 F.2d 509, 523 (3 Cir. 1963). Our decision on the limited question of the denial of the preliminary injunction is not intended to intimate any opinion about the ultimate merits of appellants' case.

Despite appellants' alarming protestations of bad faith and irreparable harm —underwritten more by tender drawn from their coffers of conclusion than by evidentiary currency contained in offers of proof—we are left with no impression that the district court's findings were "clearly erroneous." The mere institution of the grand jury proceedings did not produce the type of "chilling effect" on appellants' rights described in Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), and discussed in our recent case of Grove Press, Inc. v. City of Philadelphia, 418 F.2d 82 (3 Cir. 1969). The procedures employed before the grand jury did not amount to irreparable injury. And the allegations of irreparable deprivation of property rights were simply not supported. That appellants failed to sustain the difficult burden of establishing entitlement to preliminary equitable relief is a fact that may not be avoided by strident contentions that the district court prevented them from meeting their burden.

The judgment of the district court will be affirmed.

SEITZ, Circuit Judge (concurring).

I agree that the order of the district court should be affirmed because plaintiffs have not established the prerequisites to the issuance of a preliminary injunction. However, I deem it appropriate to set forth my conclusions in a separate opinion because I find it unnecessary to reach some of the issues discussed in Judge Aldisert's opinion.

In my view plaintiffs have asserted three claims which they contend entitle them to a preliminary injunction: (1) the district attorney is harassing them through an unconstitutional bad-faith investigation for the purpose of chilling their rights of speech, political opposition and association; (2) the district attorney's malicious bad-faith investigation has deprived them of property without due process of law by irreparably harming their construction project; (3) plaintiffs are being denied the right to counsel in their grand jury appearances and are being publicly branded as criminals in violation of their constitutional rights. Plaintiffs also contend that the district judge committed reversible error in unduly limiting them in making their record, particularly on (1) and (2) above.

As to the first ground, I believe that plaintiffs have simply not shown any bad-faith harassment of constitutional proportions and that the district judge did not commit reversible error in his evidentiary rulings on this issue.

As to the second ground, I think that plaintiffs may indeed have shown that their construction project is being irreparably harmed. But irreparable harm alone does not entitle plaintiffs to relief from a federal court; it must be shown that the harm is being caused by some unconstitutional or illegal action. The only such action alleged is that the district attorney is investigating them maliciously and in bad faith. As with the first ground, however, I think that plaintiffs have simply not made the requisite showing that the district attorney did anything improper. Nor do I think that the evidentiary rulings on this issue constituted reversible error.

As to the grand jury right to counsel claim, it seems to me that plaintiffs have an adequate remedy at law should any incriminating statements extracted without counsel be offered at any criminal trial. The legal issue they have strenuously argued is not ripe for adjudication. Moreover, I do not think that plaintiffs' claim that the investigating grand jury operates to publicly brand them with guilt entitles them to a preliminary injunction since on this record I can find nothing which would warrant application of the doctrine of Jenkins v. McKeithen, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).