GOADBY, Albert T.

v.

**PHILADELPHIA ELECTRIC COMPANY, Pennsylvania Public Utility Commission, Carter, Lewis J., Bloom, Robert K., O'Bannon, Helen B., Johnson, Michael, Goode, W. Wilson, Individually and in their capacity as members of The Pennsylvania Public Utility Commission, Bartle, Harvey, III, Individually and in his capacity as Attorney General for the Commonwealth of Pennsylvania, Commonwealth of Pennsylvania.**

**Appeal of PHILADELPHIA ELECTRIC COMPANY, in No. 80-2461**

GOADBY, Albert T.

v.

**PHILADELPHIA ELECTRIC COMPANY, Pennsylvania Public Utility Commission, Carter, Lewis J., Bloom, Robert K., O'Bannon, Helen B., Johnson, Michael, Goode, W. Wilson, Individually and in their capacity as members of The Pennsylvania Public Utility Commission, Bartle, Harvey, III, Individually and in his capacity as Attorney General for the Commonwealth of Pennsylvania, Commonwealth of Pennsylvania**

**Appeal of PENNSYLVANIA PUBLIC UTILITY COMMISSION, in No. 80-2503.**

**Nos. 80-2461, 80-2503.**

United States Court of Appeals, Third Circuit.

Argued Dec. 2, 1980.

Decided Jan. 9, 1981.

Rehearing and Rehearing In Banc Denied March 26, 1981.

Harold E. Kohn, David H. Marion (argued), Robert A. Swift, Robert J. La Rocca, Kohn, Savett, Marion & Graf, P.C., Philadelphia, Pa., for appellant Philadelphia Electric Co.; John G. Kaufman, Edward J. Hughes, and Kaufman & Hughes, Norristown, Pa., of counsel.

Larry Gesoff (argued), Barry J. Grossman, Asst. Counsels, Joseph J. Malatesta, Jr., Chief Counsel, Harrisburg, Pa., for appellant Pennsylvania Public Utility Commission.

Rosenstein & Romano, Ronald I. Rosenstein and Joseph L. Romano (argued), Norristown, Pa., for appellee.

Before ALDISERT, GARTH and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The question before the court in this appeal brought under 28 U.S.C. § 1292(a)(1) by the Pennsylvania Public Utilities Commission (PUC) and the Philadelphia Electric Company (PECO) is whether the district court erred in granting a preliminary injunction restraining the construction and operation of a high-voltage electrical line crossing the property of Albert T. Goadby. We reverse the grant of the injunction and we remand these proceedings to the district court with directions to enter an order dismissing that portion of the complaint seeking an injunction because we determine that there is an adequate remedy at law.

## I.

The appellee, Albert T. Goadby, owns about three acres of mature woodland in Montgomery County, Pennsylvania, having purchased the first of three contiguous parcels in 1957. Goadby has lived on the premises during all times relevant to this lawsuit. The property is subject to a right-of-way for a 230 Kv transmission line erected by the Pennsylvania Power and Light Company (PP&L) in 1927.

In 1971, PECO notified Goadby that it intended to build a 500 Kv transmission line across his property, parallel to the existing PP&L line, as part of a link between two PECO substations. PECO's transmission line will be on the opposite side of the PP&L line from Goadby's house, approximately 200 feet from the structure at its nearest point. The proposed line will cross the property aerially; no transmission tower will be erected on the six-tenths acre right-of-way.

According to the appellants, the new line will provide a vital connection among Pennsylvania, New Jersey, and Maryland power systems, allowing regional sharing of electricity. In addition, PECO demonstrated an immediate need for the line to buttress and augment its sources of electricity to prevent service curtailments and blackouts. PECO also noted that the transmission line will permit it to acquire low cost coal-generated electricity from western Pennsylvania. The PUC made extensive findings regarding the need for the project in decisions made in 1978 and 1979, and concluded that

"the proposed line is clearly needed now if PECO is to fulfill its statutory obligation to supply reliable electric service to its customers." App. at 121e; *see also id.* at 72e–73e.

In 1973, after its board of directors passed resolutions condemning rights-of-way for the proposed route of the line, PECO filed an application for certificates of public convenience relating to the affected real estate. In April, 1974, the PUC held an evidentiary hearing regarding Goadby's land. At that hearing, Goadby's attorney questioned witnesses concerning the scope and validity of the proposed right-of-way. On May 17, 1978, after reviewing the record, the PUC granted PECO the certificates of public convenience, finding that the utility's proposed exercise of eminent domain was necessary for the public welfare. *Id.* at 91e. Neither Goadby nor any other party appealed this decision.

New regulations promulgated by the PUC in 1978 forced PECO to file another application with the PUC, this time for site approval of the line. As required by regulation, PECO gave personal notice to all interested governmental units and gave notice to the public by newspaper publication. Goadby did not respond, but Franconia Township notified the PUC that it opposed the line for various reasons. The PUC conducted an evidentiary hearing focused on the safety and routing of the transmission line, including the effects of electromagnetic fields. Based on all the testimony, the PUC again approved the application, finding, *inter alia*, that "[b]oth the ground level electric field and the magnetic flux density of the line, using the most extreme theoretical conditions, are well below danger levels.... [T]he proposed line ... will present no danger to the public's health or safety." *Id.* at 121e–22e. Again, neither Goadby nor any other party appealed from the PUC's decision, and construction of the power line began in January, 1980.

## II.

After ignoring his right to appeal the PUC's decisions, Goadby initiated the first of an extensive series of court proceedings on May 13, 1980, the day before the right-of-way on his property was scheduled for clearing, by filing a complaint in equity against PECO in the Montgomery County Common Pleas Court. In addition to damages, Goadby asked for an injunction halting construction of the transmission line over his property. Goadby raised two major arguments: first, that PECO violated Pennsylvania law by condemning only a right-of-way and not a fee simple; and second, that the proposed right-of-way violated 15 Pa.Stat.Ann. § 1322(B)(1), which prohibits utilities from condemning certain types of rights-of-way within 300 feet of a dwelling. *See Goadby v. Philadelphia Elec. Co.*, No. 80–8312, typescript op. at 4 (Montgomery Co. C.P. June 4, 1980), *reprinted in* app. at 111e. On June 3, 1980, Goadby filed a second complaint in equity against both PECO and PP&L alleging a conspiracy to construct the transmission line in violation of the easement granted to PP&L in 1927.

At some point after filing his state court complaint, Goadby introduced the contention that the proposed power line would endanger his health. Specifically, Goadby maintained that the transmission line would create an electromagnetic field encompassing his house and that prolonged exposure to the field would cause various physical ailments. Goadby's theory was that the existence of this field and its associated dangers amounted to a de facto taking of his entire property.

On June 4, 1980, following a hearing, the state trial court dismissed the first complaint and denied a preliminary injunction requested by Goadby in the second action. The court held that PECO's condemnation of a right-of-way complied with Pennsylvania law. *Id.* at 5–6, app. at 112e–13e. In addition, the court observed that Goadby had the opportunity to challenge the scope and validity of the condemnation at his hearing before the PUC in 1974, and that in any event he has an adequate remedy at law for just compensation for the taking. *Id.* at 6–8, app. at 113e–15e.

Goadby appealed both decisions to the Pennsylvania Commonwealth Court and re-

quested that Court to enter a supersedeas enjoining construction of the transmission line pending appeal. After a hearing, the Commonwealth Court denied Goadby's supersedeas application on June 23, 1980, noting that Goadby had an opportunity to object to the safety of the transmission line in his hearing before the PUC but failed to take advantage of it. *Goadby v. Philadelphia Elec. Co.*, Nos. 1433 C.D. 1980 and 1434 C.D. 1980, typescript op. at 1–2 (Pa. Commw.Ct. June 23, 1980), *reprinted in* app. at 134e–35e. In addition the court found that the harm to PECO and the public should the transmission line be delayed outweighed any potential harm to Goadby. *Id.* at 2, app. at 135e. Goadby then applied for a supersedeas to the Pennsylvania Supreme Court and for entry of a temporary restraining order to the United States Supreme Court. Both were denied. App. at 143e, 144e.

By June 6, 1980, PECO had requested the Montgomery County Common Pleas Court to appoint a board of view to determine what damages Goadby may deserve for the six-tenths acre right-of-way condemned by PECO.[1] At the viewer's proceeding, which has not yet taken place, Goadby may properly claim greater damages than the value of the right-of-way on the theory that the electromagnetic field generated by the transmission line will diminish the value of his remaining property. *See Shano v. Fifth Avenue & High Street Bridge Co.*, 189 Pa. 245, 42 A. 128 (1899).

Notwithstanding the availability of legal remedies in the Pennsylvania court system, and notwithstanding that the board of view proceedings have not yet taken place, Goadby sought relief in federal court under 42 U.S.C. § 1983, alleging a deprivation of property without due process of law.[2] Prior to the present proceeding he twice applied to the district court for a temporary restraining order enjoining construction and operation of the transmission line, and twice Judge Daniel H. Huyett, III, denied relief, holding that Goadby had an adequate remedy at law and that he could have challenged the scope and validity of the taking before the PUC in the 1974 hearing. App. at 78. Goadby appealed to this court and to the United States Supreme Court for an injunction. Both courts denied the request. Thereafter Goadby requested that the district court hold a preliminary injunction hearing.

Judge Clarence W. Newcomer, presiding for the district court, heard Goadby's request for a preliminary injunction on September 29 and 30, 1980, and announced the court's opinion and order in open court on October 2, 1980. Although the court rejected as utterly without merit most of Goadby's arguments, it concluded that he had been denied an opportunity to challenge the scope of PECO's right-of-way in the 1974 hearing and that he would suffer irreparable harm if construction were allowed to continue. The trial court based its decision

1. Under Pennsylvania law, parties that fail to agree on the amount of compensation for condemned property may petition the Court of Common Pleas for appointment of a board of view. 15 Pa.Stat.Ann. § 3021. The viewers examine the property and take testimony to determine appropriate damages. The viewers then report to the Common Pleas Court where the parties can challenge their findings. The Common Pleas Court may confirm, modify, correct, or remand the report to the board of view. Upon entry of a final order by the Court of Common Pleas, an interested party may appeal to the state superior and supreme courts as in other cases. 15 Pa.Stat.Ann. § 3023. Furthermore, within thirty days of the filing of the report any party whose property is taken may appeal to the common pleas court and demand a trial by jury at common law. *Id.* As

of the date this case was heard, the board of view had not been appointed.

2. We reject PECO's assertion that the district court lacked subject matter jurisdiction. We need not decide whether a private utility exercising eminent domain powers engages in state action, *see Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352–53, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974). Goadby has alleged a conspiracy between PECO and PUC and it is settled that otherwise private acts are performed under color of state law for purposes of 42 U.S.C. § 1983, when they are part of a conspiracy with state officials. *See Dennis v. Sparks*, —— U.S. ——, ——, 101 S.Ct. 183, 185, 66 L.Ed. 185 (1980); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970).

on the ground that in 1974 PECO and the PUC should have known that the electromagnetic field created by the power line would endanger Goadby's health, and that because he was not so informed by the defendants, he was denied a meaningful opportunity to challenge the dimensions of the right-of-way before the PUC. The court enjoined construction of the power line on Goadby's property "until ... he has been heard in the appropriate administrative hearing of the Public Utility Commission to state his claims regarding the encroachment of an electromagnetic field on land—or his claims have been heard in this court." *Goadby v. Philadelphia Elec. Co.*, 504 F.Supp. 812, at 818 (E.D.Pa.1980), *reprinted in* app. at 117. The defendants appeal from this order. In the interim, this court has stayed that part of the district court's injunction barring construction of the line on Goadby's property, but not the injunction against its operation. On October 20, 1980, Circuit Justice William J. Brennan, Jr. refused to vacate this stay.

### III.

■ Because it cannot be doubted that the sovereign's right of eminent domain may be delegated to Pennsylvania electric light and power companies, *Brown v. Radnor Township Elec. Light Co.*, 208 Pa. 453, 57 A. 904 (1904); *see* 15 Pa.Stat.Ann. § 1322; and because the relief for the exercise of that right is the award of damages, Pennsylvania Constitution Articles 1 § 10, and 10 § 4, the ultimate question here turns on the amount of a monetary award to Goadby. At bottom then, this case centers on whether the damages sustained by Goadby from the power line are limited to the six-tenths acre right-of-way, or a larger portion, if not all, of his property.

### A.

The relationship of monetary damages to proof of irreparable harm is always central to the question of granting a preliminary injunction by a federal court. This court has repeatedly emphasized "the elementary principle that a preliminary injunction shall not issue except upon a showing of irreparable injury." *National Land & Investment Co. v. Specter*, 428 F.2d 91, 97 (3d Cir. 1970); *see also A.O. Smith Corp. v. FTC*, 530 F.2d 515, 525 (3d Cir. 1976). We have explained that preliminary injunctive relief is not available when adequate monetary damages are available:

> [T]he requisite is that the feared injury or harm be irreparable—not merely serious or substantial. "The word means that which cannot be repaired, retrieved, put down again, atoned for.... Grass that is cut down cannot be made to grow again; but the injury can be adequately atoned for in money. The result of the cases fixes this to be the rule: the injury must be of a peculiar nature, so that compensation in money cannot atone for it ...." *Gause v. Perkins*, 3 Jones Eq. 177, 69 Am. Dec. 728 (1857). "Irreparable injury is suffered where monetary damages are difficult to ascertain or are inadequate." *Danielson v. Local 275, Laborers Union*, 479 F.2d 1033, 1037 (2d Cir. 1973).

*A.O. Smith Corp. v. FTC*, 530 F.2d at 525. *See* E. Re, Equity and Equitable Remedies 1018–20 (1975).

In deciding that Goadby had demonstrated irreparable harm, the district court focused on the relative hardship to each side. The court noted that the "[p]laintiff is not a wealthy man—his land is his only valuable asset.... [PECO and the PUC have] failed to reveal to [the] plaintiff the possible nature of the injury he is to endure." 504 F.Supp. at 818, app. at 116.[3] The court did not hold that PECO had taken a de facto fee nor did it hold that the taking itself was illegal. It rejected these claims as "utterly without merit." *Id.* at 816, app. at 112. It merely held that Goadby

---

3. The district court dismissed as insignificant any harm to the utility and the public, even though it acknowledged that PECO would lose $350,000 per week beginning on October 15, 1980, for every week of delay of construction for the first month and $275,000 per week thereafter. 504 F.Supp. at 814, app. at 104.

had been denied and now is entitled to an opportunity to challenge the scope of the taking.

Faced with the record in this case, it was imprudent for the district court to find irreparable harm, the *sine qua non* of any preliminary injunction. Goadby can have his claim reduced to money damages in the state court system. Indeed, Goadby has accepted an open-ended bond from PECO, securing payment for the contemplated taking. Moreover, he has the opportunity of challenging the condemnation of any part of his land in a separate proceeding provided by Pennsylvania law. The Commission's order of May 17, 1978, which approved PECO's taking of a 150 foot right-of-way over Goadby's property, was reviewable, 42 Pa.Cons.Stat.Ann. § 763(a)(1), but Goadby took no appeal. Even so, Goadby still has the opportunity to press his claim before the Commission by filing a complaint under 66 Pa.Cons.Stat.Ann. § 701[4] requesting the rescission of PECO's certificate of public convenience on the ground that more than a 150 foot right-of-way was taken. *See* 66 Pa.Cons.Stat.Ann. § 703(g). If the Commission denies a petition for rehearing or reconsideration, Goadby can appeal the denial to the Pennsylvania Commonwealth Court. *See Department of Transportation v. PUC,* 3 Pa.Cmwlth. 554, 555, 284 A.2d 330, 332 (1971); 42 Pa.Cons.Stat.Ann. § 763(a)(1). If the Commission grants rehearing, it will either find the taking to be more than 150 feet wide, in which case Goadby will be entitled to money damages for the taking, or the Commission will deny Goadby's claim, in which case he can appeal this denial to the Commonwealth Court. If he chooses not to appeal he will receive money damages for a 150 foot-wide right-of-way. In any event, Goadby may have his electromagnetic field argument translated into monetary damages that will be neither difficult to ascertain nor inadequate. Accordingly, he has not suffered irreparable injury and therefore is not entitled to a preliminary injunction.

## B.

■ But we perceive an even more fundamental error in the district court's determination. It ignored the basic tenet of equity jurisprudence: if an adequate remedy at law exists, equitable relief will not be granted. *See United States v. American Friends Service Comm.,* 419 U.S. 7, 95 S.Ct. 13, 42 L.Ed.2d 7 (1974) (per curiam); *O'Shea v. Littleton,* 414 U.S. 488, 499, 94 S.Ct. 669, 677, 38 L.Ed.2d 674 (1974); *Iacona v. United States,* 343 F.Supp. 600, 603 (E.D.Pa.1972).

Goadby does not challenge the authority of the state or its designees to condemn property for public use by eminent domain. Nor can he contend seriously that the property here is not sought for a public use. Rather, Goadby's complaint in federal court can be distilled to three contentions: first, that PECO and the PUC misapplied 15 Pa. Stat.Ann. § 1322 in condemning a right-of-way within the curtilage of his house thereby depriving him of due process; second, that PECO and the PUC knew or should have known that the extreme hazards of the power line would result in the taking of a de facto fee rather than a right-of-way and denied him due process by failing to so inform him; and third, that the Attorney General and the Commonwealth deprived Goadby of equal protection and due process by enactment of 15 Pa.Stat.Ann. § 1322(D), allowing condemnation of less than a fee estate. For each of these contentions as well as the more refined analysis articulated in the district court's holding there is an adequate remedy at law in the state courts, and that remedy is damages.[5]

---

**4.** 66 Pa.Cons.Stat.Ann. § 701 provides:

The commission, or any person, corporation, or municipal corporation having an interest in the subject matter, or any public utility concerned, may complain in writing, setting forth any act or thing done or omitted to be done by any public utility in violation, or claimed violation, of any law which the

commission has jurisdiction to administer, or of any regulation or order of the commission. . . .

**5.** It is somewhat disturbing that these contentions are made before a federal court in 1980, when Goadby, having a right to appeal the PUC's 1974 decision to the Commonwealth

Notwithstanding Goadby's failure to appeal the PUC's 1978 and 1979 rulings, he has at least two avenues for receiving legal relief under Pennsylvania law. He may file a complaint before the PUC challenging the scope of the condemnation under 66 Pa. Stat.Ann. § 701, as outlined above. Alternatively, provided that he can establish that the electromagnetic field from the line will result in the taking of his entire property, he may assert his entire loss before the board of view, 15 Pa.Stat.Ann. § 3021, and if dissatisfied with their award, he may appeal to the Court of Common Pleas for a jury trial *de novo*, 15 Pa.Stat.Ann. § 3023.

We conclude that Goadby has an adequate and complete damage remedy under Pennsylvania law to vindicate the equity claims asserted here. Accordingly, the district court erred by granting Goadby's motion for a preliminary injunction because of the existence of the various remedies at law available in the state system.

### IV.

The judgment of the district court granting a preliminary injunction will be reversed and the case remanded with a direction to dismiss the complaint insofar as it relates to injunctive relief.[6]

Court, 42 Pa.Cons.Stat.Ann. § 763(a)(1), failed to avail himself of that opportunity. Moreover, the appellants have raised a persuasive argument that Goadby's claim is barred by principles of res judicata and collateral estoppel. Our examination of the state court record reveals that Goadby raised his constitutional issues in that forum, *see, e. g.,* Complaint ¶¶ 25, 54, 55, 61, *Goadby v. Philadelphia Elec. Co.,* No. 80–8312 (Montgomery Co. C.P., filed May 13, 1980), and that those proceedings have not yet terminated. *Cf. Allen v. McCurry,* —— U.S. ——, ——, 101 S.Ct. 411, 419, 66 L.Ed.2d 308 (1980) (state court decision on fourth amendment claim in criminal trial collaterally estops plaintiff from asserting identical fourth amendment claim in 42 U.S.C. § 1983 damage action). In addition, Judge Huyett has addressed these issues in denying Goadby's request for a temporary restraining order. Both this court and the United States Supreme Court refused to overrule that decision. Our disposition of the appeal, however, makes it unnecessary for us to decide these issues.

6. The dismissal of the injunctive claim leaves pending Goadby's damage claims. A motion to dismiss that claim is pending before the district court and is not before us at the present time. *See* 28 U.S.C. § 1292(a)(1).