Robert Kenneth **DEWEY**, Plaintiff,

v.

**REYNOLDS METALS COMPANY,**
**Defendant.**

**Civ. A. No. 5889.**

United States District Court
W. D. Michigan, S. D.
July 25, 1969.

See also, D.C., 291 F.Supp. 786.

VanderVeen, Freihofer & Cook, Grand Rapids, Mich., for plaintiff; Donald F. Oosterhouse, Grand Rapids, Mich., of counsel.

Cross, Wrock, Miller & Vieson, Detroit, Mich., for defendant; William A. Coughlin, Jr., Detroit, Mich., Fred R. Edney, Richmond, Va., of counsel.

## OPINION ON MOTIONS FOR ENTRY OF JUDGMENT AND STAY OF JUDGMENT

FOX, District Judge.

The parties to this suit are before the court for entry of judgment. The court's opinion ordered plaintiff to be reinstated, with back pay and full senority, in his job with defendant 300 F.Supp. 709.

Pursuant to Rule 8 of the Federal Rules of Appellate Procedure, defendant employer has moved for an order staying enforcement of this judgment pending disposition of defendant's appeal to the United States Court of Appeals for the Sixth Circuit, and for fixing an amount of a supersedeas bond required of defendant.

### I. *Stay of Money Judgment.*

■ In support of its motion, defendant first characterizes the relief granted in this case as "essentially a money judgment." Defendant then claims a stay of such a judgment as a matter of right, if accompanied by giving a supersedeas bond, pursuant to Rules 62(d) and 73(d) of the Federal Rules of Civil Procedure. Contrary to defendant's characterization, this remedy obviously involves much more than a money judgment. Reinstatement of Mr. Dewey is to be ordered, and his rights enforced by a permanent injunction. Authority for such a remedy is provided in the statute as follows:

"If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include reinstatement * * *." 42 U.S.C.A. § 2000e–5(g).

The court found defendant in violation of the Act, and will proceed to fashion an effective remedy. See pages 8–11 of the court's opinion with respect to defendant's unlawful practices.

■ Defendant is entitled, however, to a stay of the money judgment for back pay, and this is so ordered.

### II. *Stay of Reinstatement.*

■ Defendant is clearly not entitled to a stay of an injunction or injunctive type remedies as a matter of right. Rule 62(d) provides for stay of judgment and supersedeas bond pending appeal "subject to exceptions contained in subdivision (a) of this rule." That subdivision in turn refers to subdivision (c) for the particular rule on injunctions. This rule vests discretion in the court, sitting in

equity, to stay an injunction pending appeal under such conditions it deems proper for protection of the rights of the adverse party. The court will therefore consider defendant's motion as addressed to its sound discretion, and will examine the remainder of its contentions in the light of insuring justice to the parties to this lawsuit.

Defendant urges the court to consider four factors in deciding whether to stay reinstatement: (1) whether defendant has made a strong showing that it is likely to succeed on the merits of the appeal; (2) whether defendant will suffer irreparable injury if no stay is granted; (3) whether a stay would substantially harm plaintiff; and (4) the public interest. Each of these points was, in identical or similar form, argued by defendant in the trial of this case. Each was carefully considered at that time, and disposed of in the court's opinion.

■ As to point (1), defendant at this hearing sought merely to reargue its case. No new material was presented to the court. Defendant's former arguments do not, in this court's view, amount to a strong showing of success on appeal.

■ Point (2) was also, in substance, disposed of by the court's opinion in this case. The court found that defendant would suffer no "undue hardship," under the Equal Employment Opportunity Commission guidelines, by accommodating the religious beliefs of Mr. Dewey. The present contention that reinstatement will "irreparably harm" defendant can fare no better. For purposes of this motion, "undue hardship," and "irreparable harm" can be equated. Defendant presented no evidence of the former at trial, and the affidavit now submitted does not suffice to convince the court of the latter. Defendant's fears of injury continue to be *anticipatory* and based solely on speculation. The plant is not working overtime now and and has not been for over eight months. Defendant's overtime schedule is entirely in the control of management. In addition, Mr. Dewey is not exempt from all overtime work. If overtime problems develop, the court has retained jurisdiction of this matter and its remedy is flexible. Accordingly, there is no hardship whatsoever to defendant in the immediate reinstatement of Mr. Dewey.

■ Answering point (3), the court is convinced that the only party to be irreparably harmed by a stay of this judgment would be plaintiff. Although he still has a source of income, the record shows that he is not making as much as he would were he reinstated with defendant. Occurring in one of the most inflationary periods in recent history, any wage loss involves added hardship. A stay would, in addition, threaten the skills of a die repairman. If such a skilled worker is kept from his trade, changes in modern technology lead rapidly to obsolescence of knowledge. Plaintiff also faces considerable hardship in the awesome task a person of his means faces when litigating against the corporate resources of a defendant such as Reynolds. A stay would further amplify the effective inequality of these parties. For these reasons, a stay would irreparably harm the plaintiff.

Defendant's final point concerns the public interest. Defendant foresees grave consequences to its labor bargaining position as a result of reinstating plaintiff. It argues that, because of these predicted consequences, the public interest coincides with that of the corporation. In essence, its position is that avoiding indirect impact upon a large corporation is more consistent with public values than enforcing the constitutional rights of the individual before this court. The heart of this position is nothing more than institutional intransigence.

Defendant's position, framed as above, highlights one of the most important aspects of this case: the relationship of the individual to the overwhelming institutions of modern society. It is true that the corporation and other institutional forms are to a large degree responsible

for the current prosperity of the United States. Institutions, however, often grow insensitive to the human beings they encompass. Government itself has grown overwhelming. But we must not lose sight of the paramount rights of free individuals. Protection of these inalienable rights has been the cornerstone of national policy since the birth of this nation. The Declaration of Independence and the Fourteenth Amendment deal with the inalienable rights of individuals, not institutions. They reflect the basic theme that government and its organs are constituted by men to secure these rights to individual human beings. Congress had this in mind when it enacted Title VII of the Civil Rights Act in 1964:

"We believe in the inherent dignity of man. He is born with certain inalienable rights. His uniqueness is such that we refuse to treat him as if his rights and well being are bargainable." 2 U.S.Cong.Adm.News '64, at page 2517.

One of these inalienable rights is freedom of religion. The First and Fourteenth Amendments to the Constitution and the Civil Rights Act look to securing this right to a single human being.

■ Following this clear principle, this court believes the public interest in this case to be best served by enforcing the constitutional rights of plaintiff. This is a classic case in which the government of the United States is called upon to secure the rights of a single individual. Defendant's motion to stay reinstatement is hereby denied.

The court will retain jurisdiction of this matter to insure continued protection of plaintiff's rights and provide the flexibility of an open ended remedy should a significant change of circumstances occur, especially with respect to defendant Reynolds. The court is certain that all parties involved can approach this case with the kind of reasonableness that reasonable men can bring to the management of institutions in the economic structure, and will use every effort to reach and maintain an accommodation within the framework of this remedial scheme. It will, however, be present to mediate any disputes affecting matters covered by its decree in this case, and, if necessary to issue additional orders to protect all concerned.

■ It should be made clear to the parties that the decree and any further action the court may take thereunder extends to individual officers and employees of defendant Reynolds. If necessary, to insure justice, the union and its officers may also be made a party.

■ The court believes this form of remedy necessary and appropriate to insure justice in this action. It is within the inherent equity power of District Courts to fashion effective remedies to protect federal rights. Griffin v. School Bd. of Prince Edward County, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964). The Supreme Court has encouraged imagination and flexibility in providing remedies to make effective the Congressional purpose:

"It is for the federal courts 'to adjust their remedies so as to grant the necessary relief' where federally secured rights are invaded. 'And it is also well settled that where legal rights have been invaded, and a federal statute provides a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done.'" J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964).

It is to fulfill this duty that the relief in this case is granted.

III. *Engaging in Unlawful Employment Practices (42 U.S.C.A. § 2000e–5(g).*

■ Defendant argues that, in order to be subject to injunctive relief under 42 U.S.C.A. § 2000e–5(g), supra, page 1118, the court must find specific intent or purpose to discriminate against Mr. Dewey. This is not what the statute requires, either for the substantive violation or the imposition of injunctive relief. Defendant's interpretation is con-

sistent with neither the language nor purpose of the statute. Defendant has "intentionally engaged" and plans to continue to engage in practices which had the effect of the discrimination the Act forbids:

"It shall be an unlawful employment practice for an employer—

(1) to * * * discharge any individual * * * because of such individual's * * * religion * *." 42 U.S.C.A. § 2000e–2(a) (1).

It intentionally and purposely discharged Mr. Dewey for failure to work on Sundays or find a replacement, and would continue to do so if this relief is not granted. By this action, defendant has intentionally engaged in an unlawful employment practice within the meaning of the above provision. Furthermore, defendant's reading of the statute would serve to foreclose effective remedies for violation of this important statute. Congress intended to prevent discrimination when it passed this Act. It must also have intended to provide effective remedies to secure protection under its provisions. Defendant's discharge of plaintiff was found to be discriminatory, and as such, must be subject to the full impact of remedies Congress has chosen to effect its purpose.

Defendant also urges that a "good faith" violation of Mr. Dewey's rights does not render it liable to relief under 42 U.S.C.A. § 2000e–5(g). Defendant cites Richards v. Griffith Rubber Mills, 300 F.Supp. 338 (D.C.Or.1969), as authority for this contention. This court feels that it must reject the rule adopted by the Richards court. The cases relied on there as basis for a "good faith" exception dealt with governmental and official immunity, and should not be extended to provide an insulation for private activities based on private contracts. Dodd v. Spokane County, 393 F.2d 330 (9th Cir. 1968); Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Such a rule would, for reasons previously mentioned, effectively emaciate Title VII.