479 F.2d 607
 83 L.R.R.M. (BNA) 2349, 71 Lab.Cas. P 13,705
 PITTSBURGH NEWSPAPER PRINTING PRESSMEN'S UNION NO. 9, Appellant,
v.
PITTSBURGH PRESS COMPANY, a corporation.
PITTSBURGH TYPOGRAPHICAL UNION NO. 7, AFL-CIO, an
unincorporated labor organization by its
President, John Feigel, and Trustee ad
Litem, Appellant.
v.
The PITTSBURGH PRESS COMPANY.
 Nos. 72-1495, 72-1496.
 United States Court of Appeals,
Third Circuit.
 Argued April 3, 1973.
Decided May 25, 1973.
 
 Lloyd F. Engle, Jr., Kuhn, Engle & Blair and Richard D. Gilardi, Laughlin, Gilardi & Cooper, Pittsburgh, Pa., for appellant.
 Charles R. Volk, Thorp, Reed & Armstrong, Pittsburgh, Pa., and Don H. Pace, Baker, Hostetler & Patterson, James P. Garner, Cleveland, Ohio, for appellee.
 Before ROSENN and HUNTER, Circuit Judges, and BECHTLE, District Judge.
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 In this consolidated appeal, two labor unions challenge the denial in the District Court for the Western District of Pennsylvania, 343 F.Supp. 55, of preliminary injunctions to restrain appellee, The Pittsburgh Press, from reducing the number of shifts to be worked by union members. We find no abuse of discretion in the district court's finding of insufficient proof of irreparable harm and therefore affirm its order denying the injunctions.
 
 
 2
 Appellee announced on May 10, 1972, plans to reduce the number of shifts worked by both its pressmen and typographers because of declines in the newspaper's circulation and advertising pages. Appellants, Pittsburgh Newspaper Printing Pressmen's Union No. 9 and Pittsburgh Typographical Union No. 7 objected to the new manning schedules, claiming the employer had no right under its collective bargaining agreements with the unions to impose such changes until an arbitrator had determined whether the changes were permissible. The unions pointed to clauses in each contract that they interpreted to require binding arbitration of the dispute and maintenance of the status quo pending arbitration.
 
 
 3
 When the Press refused to refrain from instituting the work schedule changes until arbitration was completed, each union obtained from the district court on May 19 a temporary restraining order against the changes. After a consolidated hearing on May 30, on each union's motion for a preliminary injunction, the restraining orders were extended to June 9. On June 6, after consideration of the evidence presented and arguments made at the hearing, the district court dissolved the restraining orders and denied the motions for preliminary injunctions.[1]
 
 
 4
 The district court in its opinion noted that it had jurisdiction to consider the question of maintaining the status quo pending arbitration, but declined to do so because a likelihood of irreparable harm had not been shown by the unions requesting the injunctions. In dictum it noted that the policy favoring arbitration, as expressed in Union of Operating Engineers, Local 150 v. Flair Builders, Inc., 406 U.S. 487, 92 S.Ct. 1710, 32 L. Ed.2d 248 (1972), might well require an arbitrator, rather than the court, to decide if the status quo should be maintained in the present case.
 
 
 5
 On appeal, we need not reach the issue of whether interpretation of the alleged status quo clauses in the two collective bargaining agreements here should have been for the court or the arbitrator, for we cannot find an abuse of discretion or clear mistake in the district court's finding that a likelihood of irreparable harm had not been shown. In order for a federal court to issue an injunction to enforce a labor agreement containing binding arbitration and status quo maintenance clauses, it must find irreparable harm threatened and that the party seeking the injunction would suffer more harm without the injunction than would the enjoined party if it were granted. Boys Markets, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235, 254, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). When a district court has found irreparable harm was not proven, "[i]t is for us [as the appellate reviewing court] to determine only whether there has been an abuse of that discretion, whether there was an error of law or whether a clear mistake was made in the consideration of the proof." National Land & Investment Co. v. Specter, 428 F.2d 91, 95 (3d Cir. 1970).
 
 
 6
 The unions argue that the district court erred in finding here that no irreparable harm had been shown. Noting that the district court determined that "any wages [that] will be lost as a consequence of defendant's action in either case . . . can be recouped should the Union receive a favorable award" from the arbitrator, the unions point to evidence presented that losses other than wages would be suffered were an injunction not granted. The unions emphasize testimony that (1) employees given shorter work weeks were likely to leave the profession and, even, the Pittsburgh area; (2) the loss of regular situations would also entail loss of apprenticeships; (3) prospective pressmen and typographers would be discouraged from entering the trade; and (4) the union's pension fund would suffer loss from loss of work shifts.
 
 
 7
 Although the unions elicited on crossexamination from the production manager of the Press a statement that he could not be sure that the proposed changes would not cause loss of a guaranteed five shifts per week per employee, the manager's testimony that no loss of jobs by union members would be required in order to implement the changes stands uncontradicted. Officials of the two unions who testified admitted that none of their members would be discharged as a result of the scheduling changes.[2]
 
 
 8
 In light of this evidence before the district court, we cannot accept the union argument that there was a clear misreading of the evidence in the district court's finding. We have no grounds on which to question the court's findings and judgment in light only of the somewhat speculative assertions by union officials that the union would suffer irreparable harm by its members leaving town, its lessened ability to attract and train new pressmen and typographers, and the diminishment of payments into the pension fund.
 
 
 9
 Appellants cite a number of cases[3] in which injunctions have been granted to prevent employers from disturbing the status quo, but in most of them, employees were about to lose jobs, a situation quite different from the present case where the only evidence presented to the district court was that some employees would lose overtime hours and others might lose some regular time shifts. Nor is it altogether certain under the precise language of the contracts on which this litigation is predicated that the announced scheduling changes of the Press amounted to a change in the status quo. Moreover, none of the cases cited involved a finding by an appellate court that a trial court abused its discretion or made a clear mistake in not finding a likelihood of irreparable harm when jobs were threatened.
 
 
 10
 Appellants also contend that an injunction is not barred by the provisions of the Norris-LaGuardia Act, 29 U.S.C. Sec. 101 et seq. Since the district court properly held that under ordinary equity principles this case is one in which an injunction would not be appropriate, we need not determine whether the case otherwise falls within the exception to Norris-LaGuardia carved out by Boys Markets. Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union No. 18, 471 F.2d 872 (6th Cir. 1972), cert. denied, 411 U.S. 967, 93 S.Ct. 2149, 36 L.Ed.2d 687 (1973).
 
 
 11
 The judgment of the district court will be affirmed.
 
 
 
 [1]
 Since denial of the injunctions by the district court, this court granted, on June 23, 1972, appellants' motion for restoration of the injunctions pending appeal, thus restraining the Press from making the scheduling changes. Arbitrators have in the meantime also ruled on each union's claims. The Newspaper Printing Pressmen's Union dispute resulted in a determination that 50 of the proposed 62 shift eliminations were justified under the contract. The Typographical Union dispute resulted in a determination by the arbitrator that the Press did not have a right under the contract to lay off any "situation holders," i. e., job slots consisting of five full days for one individual
 The arbitrator of the Pressmen's dispute did not rule on the issue of maintenance of status quo pending arbitration because the union did not agree to submission of that issue to him. The arbitrator in the Typographical Union's dispute did decide the issue; he held the status quo should have been maintained, i. e., the Press should not have implemented the changes (as it did not) until arbitration was completed.
 Although the underlying disputes between employer and unions have been resolved, and although the unions obtained from this court previously what they were unable to obtain from the district court originally, this appeal is not moot because the issues involved are "capable of repetition, yet evading review." Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 713, 35 L.Ed. 2d 147 (1973); Avco Corp. v. Local 787, Autoworkers, 459 F.2d 968, 974 (3d Cir. 1972); Pacific Maritime Ass'n v. International Longshoremen's and Warehousemen's Union, 454 F.2d 262 (9th Cir. 1971).
 
 
 [2]
 Although one union official speculated that two pressman helpers would lose their jobs, we find this speculation insufficient to indicate the district court misinterpreted the evidence before it
 
 
 [3]
 Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co., 363 U.S. 528, 80 S.Ct. 1326, 4 L.Ed.2d 1435 (1960); Local Lodge 2144 v. Railway Express Agency, Inc., 409 F.2d 312 (2d Cir. 1969); Westchester Lodge 2186 v. Railway Express Agency, Inc., 329 F.2d 748 (2d Cir. 1964); Dewey v. Reynolds Metal Co., 304 F.Supp. 1116 (W.D.Mich. 1969), reversed on other grounds, 429 F.2d 324 (6th Cir. 1970), aff'd per curiam, 402 U.S. 689, 91 S.Ct. 2186, 29 L.Ed.2d 267 (1971); Local Division 1098 v. Eastern Greyhound Lines, 225 F.Supp. 28 (D. D.C.1963) (Employees could have retained jobs but only by moving from Washington, D.C., to Chicago); Auto Workers v. Seagrave Division, 56 LRRM 2875 (E.D.Ohio 1964); I.U.E. v. Radio Corporation of America, 77 LRRM 2201 (D. N.J.1971); Mailers Union No. 6 v. New York News, 76 LRRM 2619 (N.Y.Sup.Ct. 1971). (Job losses not involved in last two cases.)