Loran W. ROBBINS, et al., Plaintiffs/Counterdefendants,

v.

The PEPSI-COLA METROPOLITAN BOTTLING COMPANY, et al., Defendants/Counterclaimants,

and

Frito-Lay, Inc., et al., Additional Counterclaimants,

and

Central States, Southeast and Southwest Areas Pension Fund, et al., Additional Counterclaim Defendant.

CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, et al., Plaintiffs/Counterclaim Defendants,

v.

PEPSICO, INC., et al., Defendants/Counterclaimants,

and

Pepsi-Cola Bottling Company of Los Angeles; Taco Bell Corp.; Pizza Hut, Inc.; and North American Van Lines, Inc., Additional Counterclaimants.

Nos. 84 C 170, 85 C 9385.

United States District Court, N.D. Illinois, E.D.

June 23, 1986.

Neil K. Quinn, Joseph B. Lederleitner, Mary Anne H. Capron, Richard M. Waris,

Pretzel & Stouffer, Chartered, Thomas C. Nyhan, Alan M. Levy, John E. Bardgett, Daniel M. Locallo, Chicago, Ill., Rodney F. Page, Michael Evan Jaffe, Ronald L. Castle, James J. Armbruster, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., James L. Coughlan, Coghlan & Joyce, Chicago, Ill., for plaintiffs/counterdefendants.

Arthur S. Friedman, Peter N. Wang, Deborah Fabricant, Friedman, Wang, Bleiberg & Heimer, P.C., New York City, Stanley J. Adelman, Rudnick & Wolfe, Chicago, Ill., for defendants/counterclaimants.

John R. Climaco, John A. Peca, Jr., Thomas L. Colaluca, John M. Masters, Climaco, Climaco, Seminatore & Lefkowitz Co., L.P.A., Cleveland, Ohio, Edward J. Calihan, Jr., Anna Lavin, Calihan & Lavin, Chicago, Ill., for third-party defendants.

Henry Rose, Mitchell L. Strickler, Pension Benefit Guar. Corp., Washington, D.C. Gen. Counsel, Eileen M. Marutzky, Asst. U.S. Atty., U.S. Atty.'s Office, Chicago, Ill., Local Counsel, for amicus curiae.

NORDBERG, District Judge.

On May 8, 1986, this court ordered the Central States, Southeast and Southwest Areas Pension Fund ("Central States" or "the Fund") to recompute the alleged withdrawal liability [1] of the "controlled group" consisting of PepsiCo, Inc. ("PepsiCo"), Pepsi-Cola Metropolitan Bottling Co. ("Pepsi-Cola"), Frito-Lay, Inc. ("Frito-Lay") and Wilson Sporting Goods Co. ("Wilson").[2] The May 8, 1986 order applied to the Fund's withdrawal liability assessments against the Pepsi group for the years 1981, 1982, 1983 and 1984. It also dismissed all of the Pepsi group's constitutional defenses,[3] except for its fifth amendment chal-

---

**1.** The Fund had assessed withdrawal liability in accordance with the Multiemployer Pension Plan Amendments Act, 29 U.S.C. §§ 1381 et seq. The procedural background of these consolidated cases is set forth in this court's May 8, 1986 Memorandum Opinion and Order, 636 F.Supp. 641 (D.Ill.1986).

**2.** The court determined that these defendants fell within the definition of "controlled group" set forth in 29 U.S.C. § 1301(b)(1). May 8th Mem.Op. at 14–17 and n. 17. For the purposes of this order, the court will refer to this controlled group as "Pepsi" or "the Pepsi group."

**3.** May 8th Mem.Op. at 25–56.

lenge to the statutory presumptions set forth in 29 U.S.C. § 1401(a)(3).[4]

On May 23, 1986, this court ordered the Pepsi group to commence interim payments of their withdrawal liability in accordance with the Fund's original schedules. These payments are subject to a readjustment after the Fund completes the recalculation ordered in the May 8, 1986 opinion. The May 23, 1986 order instructed Pepsi to pay the overdue assessments, plus interest,[5] and to begin paying the prospective monthly payments as they fell due. Pepsi's first payment is scheduled for July 1, 1986. Pepsi filed a notice of appeal of the May 23, 1986 order, and now motions this court for approval of a supersedeas bond pursuant to Fed.R.Civ.P. 62(d).[6] This court heard oral argument on June 6, 1986, and set an expedited briefing schedule on Pepsi's motion for approval of the bond.[7] For the following reasons, the court denies Pepsi's motion for approval of its supersedeas bond, and its request for an order staying the May 23, 1986 order during the pendency of the appeal.[8]

### The MPPAA's Interim Payments Requirement

The MPPAA's interim payment provisions are set forth in 29 U.S.C. §§ 1399(c)(2) and 1401(d). These sections provide:

(2) Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor under subsection (b)(1) of this section beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule.

(3) Each annual payment determined under paragraph (1)(C) shall be payable in 4 equal installments due quarterly, or at other intervals specified by plan rules. If a payment is not made when due, interest on the payment shall accrue from the due date until the date on which the payment is made.

29 U.S.C. § 1399(c)(2).

Payments shall be made by an employer in accordance with the determinations made under this part until the arbitrator issues a final decision with respect to the determination submitted for arbitration, with any necessary adjustments in subsequent payments for overpayments or underpayments arising out of the decision of the arbitrator with respect to the determination.

29 U.S.C. § 1401(d). The May 8, 1986 opinion upheld the constitutionality of the interim payments scheme set forth in these sections. May 8th Mem.Op. at 54–56. It concluded that the MPPAA's statutory scheme, which requires payment of withdrawal liability pending the resolution of any disputes, was consistent with due process and therefore enforceable in the district courts. Id.[9] In the May 23, 1986

---

**4.** May 8th Mem.Op. at 44–51.

**5.** The MPPAA contains a specific statutory requirement with respect to interest on overdue assessments. See 29 U.S.C. § 1399(c)(3); 29 C.F.R. § 2644.3.

**6.** Pepsi is also appealing this court's May 8, 1986 decision; however, the present motion only concerns the appeal from the May 23, 1986 order.

**7.** The court commends both sides for the high quality of the briefs filed with respect to this motion, given the short time period set by the June 6, 1986 scheduling order.

**8.** The parties were orally notified of the court's decision on June 16, 1986, in order to allot Pepsi sufficient time to prepare for the first payment on July 1, 1986.

**9.** This conclusion is consistent with all of the circuits who have considered this issue. See generally Board of Trustees of the Western Conference of the Teamsters Pension Trust Fund v. Thompson Building Materials, Inc., 749 F.2d 1396, 1404 (9th Cir.1984), cert. denied, — U.S. ——, 105 S.Ct. 2116, 85 L.Ed.2d 481 (1985); Keith Fulton & Sons, Inc. v. New England Teamsters and Trucking Industry Pension Fund, Inc., 762 F.2d 1124, 1135–36 (1st Cir.1984), modified on other grounds, 762 F.2d 1137 (1st Cir.1985); Republic Industries, Inc. v. Teamsters Joint Council No. 83 of Virginia Pension Fund, 718 F.2d 628, 639–42 (4th Cir.1983), cert. denied, 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984); Dorns Transportation, Inc. v. IAM National Pension Fund, 578 F.Supp. 1222, 1232 (D.D.C.1984), aff'd, 753 F.2d 166 (D.C.Cir.1985).

opinion, this court concluded that ordering interim payments was "the most appropriate method of implementing Congress' intent regarding installment payments pending the resolution of any disputes over the determination or calculation of withdrawal liability." May 23rd Mem.Op. at 7. The court based this conclusion on the language and legislative history of Sections 1399(c)(2) and 1401(d) of the MPPAA. *See* May 23rd Mem.Op. at 2–7.

The undisputed purpose of the interim payments provision is to ensure a continuous flow of money to the pension fund. *Pantry Pride v. Retail Clerks Tri-State Pension Fund,* 747 F.2d 169, 171 (3d Cir. 1984). To this end, § 1399(c)(2) requires an employer to make interim payments "notwithstanding any request for review or appeal," and § 1401(d) directs payments "until the arbitrator issues a final decision." [10] The Fund argues that this specific language of the MPPAA supplants the general procedure under Fed.R.Civ.P. 62(d),[11] which allows a defendant to stay a money judgment pending appeal if he posts an adequate supersedeas bond.

[redacted] After reviewing the arguments of the parties and the language of the statute, the court concludes that the supersedeas procedure set forth in Rule 62(d) is inapplicable to appeals from an interim payments order.[12] Section 1399(c)(2) contains no limiting language. The plain meaning of the statute directs interim payments "notwithstanding any ... appeal," whether it is before the arbitrator, the district court or the circuit court. If Congress meant to limit the broad meaning of the words "any appeal," it could easily have done so.

Pepsi cites *TIME–DC, Inc. v. Management-Labor Welfare & Pension Funds of Local 1730,* 756 F.2d 939, 946 n. 1 (2d Cir.1985) for the proposition that the term "appeal" in § 1399(c)(2) refers only to an appeal to an arbitrator under 29 U.S.C. § 1401. This court finds that the *TIME–DC* court's narrow definition of "appeal" is inconsistent with the statutory language and the legislative purpose underlying its enactment.[13]

**10.** Although the statute contemplates resolution of withdrawal liability disputes in arbitration, this suit began in court, with the Fund seeking interim payments for Pepsi-Cola's alleged partial withdrawal in 1981. The court resolved the statutory and constitutional claims which were not subject to arbitration in its May 8, 1986 order. It instructed the Fund to recompute the withdrawal liability, and if Pepsi had any further disputes with respect to the Fund's determination or calculation of liability, it could seek review from the Fund pursuant to 29 U.S.C. § 1399, or it could initiate arbitration under § 1401. Thus, at this stage of the litigation, there has been no final decision by an arbitrator which might affect Pepsi's obligation to provide interim payments to the Fund.

**11.** Rule 62(d) of the Federal Rules of Civil Procedure provides:

> *Stay Upon Appeal.* When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule. The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. The stay is effective when the supersedeas bond is approved by the court.

Subdivision (a) creates three exceptions to the automatic stay provisions of subdivision (d): injunctions, receiverships and patent accountings. The stay of an injunction pending appeal is governed by Rule 62(c), which provides:

> *Injunction Pending Appeal.* When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

**12.** This order expresses no opinion with respect to the appealability of the May 23rd order directing interim payments. Although some courts have refused to approve a supersedeas bond due to a clear lack of appellate jurisdiction, *see, e.g., Morgan v. Kerrigan,* 401 F.Supp. 270, 271 (D.Mass.1975); *R.D. Goldberg Theatre Corp. v. Tri-States Theatre Corp.,* 119 F.Supp. 521 (D.Neb.1944), this court finds that the issue of appellate jurisdiction under 28 U.S.C. § 1292 is best left to the Seventh Circuit. *See E.F. Hutton & Co. v. Brown,* 305 F.Supp. 371, 402 (D.Tex.1969).

**13.** Furthermore, the court notes that this definition of "appeal" was merely background dicta in a case involving exhaustion of statutory remedies and the proper interpretation of 29 U.S.C. § 1415. The opinion contains no substantive

In *Dorns Transportation, Inc. v. IAM National Pension Fund,* 578 F.Supp. 1222, 1232 (D.D.C.1984), *aff'd,* 753 F.2d 166 (D.C. Cir.1985), the court explained the Congressional purpose behind the interim payments requirement:

> The legislative history voices Congressional concern with the adverse effects of non-payment of liability upon multiemployer plans. Plans lose the benefit of investment income that may have been earned upon timely payments. Additional administrative costs are incurred by the need to ascertain, review and defend challenges to the amount of imposed liability. By requiring payments during the adjudicatory process, Congress sought to further the policy that those who remain in the fund should not bear additional burdens and losses from employer withdrawals. Remarks of Rep. Thompson, 26 Cong.Rec. H7899 (Daily ed., August 26, 1980).... By requiring payment pending appeal, the Act effectuates the avowed purpose of shifting the economic burdens of withdrawal back to the withdrawing employer.

The court finds that neither the plain statutory language nor the legislative history contain any indication that Congress intended the interim payments provision to apply only to appeals to the arbitrator. This interpretation, if accepted, would run counter to Congress' express goal of ensuring that litigation would not disrupt the continuous flow of contributions to the Fund. Following Pepsi's interpretation, the court could order interim payments while the parties were before the arbitrator, but the employer could avoid this statutory requirement by posting an adequate supersedeas bond and appealing to the district courts, circuit courts, or even the Supreme Court. In most cases, the arbitra-

tion process will result in a far shorter delay than any appeals to the federal courts. If Pepsi's interpretation of the interim payments provision were valid, then the statute would ensure continued payments only for a short period of time, and allow a suspension during any subsequent appeals, which could take years. This construction of the statute cannot be reconciled with the Congressional purpose underlying § 1399(c)(2).

Congress emphasized that an employer could challenge his withdrawal liability, but the decision to do so would not suspend his statutory obligation to continue contributing to the Fund. The court finds that when Congress ordered these installment payments, it intended them to continue until the issuance of a final decision regarding the employer's total obligation to the Fund, whether by arbitrator or court. *See also* 29 U.S.C. § 1401(d). Given the clear mandate of Congress set forth in § 1399(c)(2), Pepsi's assertion that it has a "right" to a supersedeas bond pursuant to Rule 62(d) is rejected as being contrary to that section. The MPPAA's unique statutory scheme was designed to rectify and protect against the serious economic repercussions caused by employers withdrawing from multiemployer pension plans, and the interim payments requirement is an integral part of this statutory scheme. *See generally* May 23rd Mem.Op. at 2–4. It would have little effect if the provisions of Rule 62(d) allowed an employer to forestall his payments by filing an appeal to the federal courts.[14]

Rule 62(d) provides the general procedure for staying a money judgment. Although it is not clear that Rule 62(d) would apply to an order requiring retroactive *and* prospective compliance with a statutory duty,[15] the court finds that the clear lan-

---

analysis of the term, and this definition was not critical to the resolution of the issues raised in that appeal.

**14.** The court expresses no opinion regarding the ultimate economic fairness or wisdom of this interim payment procedure. This order merely reaffirms the court's earlier conclusion that Congress did not contravene any constitutional

rights when it imposed these obligations on withdrawing employers.

**15.** Pepsi sought to post a bond covering all of its interim payments, past and future. In light of the court's decision that the MPPAA supersedes the requirements of Rule 62(d), the court need not determine whether that statute authorizes the approval of a bond covering a judgment

guage of § 1399(c)(2), underscored by the legislative purpose behind its enactment, negates any alleged "right" Pepsi has to post a bond under the general rule. Congress is clearly empowered to create exceptions to the general procedural requirements set forth in the Federal Rules. *See, e.g., Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976) (specific venue statute for national banks supersedes the general venue provision for securities claims provided in 15 U.S.C. § 78aa).

**Stay of Enforcement Under Rule 62(c)**

The Pepsi group argues that even if Rule 62(d) does not apply to the May 23rd order, they are still entitled to a stay of proceedings under Rule 62(c). Unlike the automatic stay provisions of Rule 62(d), Rule 62(c) does not provide any *right* to a suspension of an injunctive order pending its appeal to the circuit court. This rule permits a district court, in its discretion, to stay the enforcement of an order granting injunctive relief. If no stay is obtained, then the district court's injunctive order remains in effect. *See generally* 11 Wright & Miller, *Federal Practice & Procedure:* § 2904.

Rule 62(c) applies to injunctions and other injunctive-type orders which are not encompassed by the automatic stay provisions of Rule 62(d). *See Donovan v. Fall River Foundry Co., Inc.,* 696 F.2d 524, 526 (7th Cir.1982); [16] *Dewey v. Reynolds Metal Co.,* 304 F.Supp. 1116, 1118 (W.D.Mich. 1969), *rev'd on other grounds,* 429 F.2d 324 (6th Cir.1970). The requirements for a stay of an injunctive order pending appeal are similar to those necessary to obtain a preliminary injunction. *Glick v. Koenig,* 766 F.2d 265, 269 (7th Cir.1985); *Adams v. Walker,* 488 F.2d 1064, 1065 (7th Cir.1973). *See generally Lawson Products, Inc. v. Avnet, Inc.,* 782 F.2d 1429, 1433-34 (7th Cir.1986); *American Hospital Supply Corp. v. Hospital Products Ltd.,* 780 F.2d 589, 593 (7th Cir.1986). In *Glick,* the Seventh Circuit set out four factors for the district courts to consider when determining whether to grant a stay pending appeal:

(1) whether appellant has made a showing of likelihood of success on appeal, (2) whether appellant has demonstrated a likelihood of irreparable injury absent a stay, (3) whether the stay would substantially harm other parties to the litigation, and (4) where the public interest lies.

*Glick,* 766 F.2d at 269. The court will consider each of these factors in turn.

---

ordering retrospective and prospective performance of a statutory obligation. The court notes, however, that, if a judgment includes both a money award and a grant or denial of an injunction, a supersedeas bond usually stays only the money award, and not the portion of the judgment that awards prospective relief. 11 Wright & Miller, *Federal Practice and Procedure,* § 2905. This is the general rule applied in the cases *cited by Pepsi* in support of its argument that Rule 62(d) applies to the entire May 23rd order. *See, e.g., Thomas v. City of Evanston,* 636 F.Supp. 587 (N.D.Ill.1986); *Service Employees Industrial Union v. Children's Hospital,* 117 LRRM 2488 (D.D.C.1984); *Dewey v. Reynolds Metal Co.,* 304 F.Supp. 1116 (W.D.Mich.1969), *rev'd on other grounds,* 429 F.2d 324 (6th Cir. 1970). Thus, even *if* Rule 62(d) applied to the May 23rd judgment—which it does not—it would have applied only to the portion of the order directing payment of the overdue interim assessments. The portion of the order requiring prospective payments would have been governed by Rule 62(c).

**16.** Pepsi cites the *Donovan* decision for the proposition that "orders to do" are controlled by Rule 62(c), while "orders to pay" are governed by Rule 62(d). The court does not dispute this general dividing line for determining the availability of an automatic stay pending appeal. However, it finds that the *Donovan* distinction is inapplicable to situations in which Congress has predetermined that an appellant is not entitled to an automatic stay of his money judgment pending appeal. In *Donovan,* the court rationalized the availability of a bond in a money judgment on the fact that it "assures a prevailing plaintiff that sheer passage of time will not render the judgment uncollectable and that he will be compensated (maybe not completely) for the delay in receiving his money." *Donovan,* 696 F.2d at 526. The delay and attendant loss of contributions are the two factors Congress sought to alleviate when it enacted § 1399(c)(2). Although delay may be part of the appellate process in the ordinary case, Congress clearly sought to eliminate it from litigation surrounding withdrawal liability. Therefore, the distinction between orders to do and orders to pay set forth in *Donovan* does not control the court's conclusion with respect to the availability of Rule 62(d) to stay the interim payments order.

■ The court finds that Pepsi has not demonstrated any irreparable injury resulting from this court's order requiring Pepsi to comply with its statutory obligations to provide interim payments.[17] The only real "injury" Pepsi will suffer is the loss of the ability to invest this money while its dispute over withdrawal liability is pending.[18] This congressionally-imposed "injury" is neither unconstitutional nor "irreparable." The Pepsi group does not allege that this court's enforcement of § 1399(c)(2) will bankrupt them or leave them on the brink of financial ruin.[19] As this court emphasized in its May 23rd order, Pepsi will be reimbursed for any amounts which were erroneously assessed.[20] In short, the de-

17. The first factor, which addresses the likelihood of success on appeal, is not applied literally on a motion for a stay pursuant to Rule 62(c). As the court noted in *Thomas v. City of Evanston*, 636 F.Supp. 587 (N.D.Ill.1986):

> The 'likelihood of success' [factor] presents the most conceptual difficulty. Obviously, we think an appeal will probably fail; we have reviewed our opinion and stand by it. Had we thought an appeal would be successful, we would not have ruled as we did in the first place. But a party seeking a stay need not show that it is more than 50% likely to succeed on appeal; otherwise, no district court would ever grant a stay. It is enough that the [appellant] have a substantial case on the merits.

(citations omitted). This court has reviewed its May 23, 1986 order, and remains convinced that it is an accurate interpretation of the congressional mandate set forth in § 1399(c)(2). The court finds, however, that Pepsi has satisfied this relaxed standard for demonstrating the "likelihood of success factor," since its appeal raises issues regarding the interpretation of the MPPAA which the Seventh Circuit has never addressed.

18. Pepsi's Reply Memorandum asserts that it will be irreparably harmed if this court denies a stay because it will be forced "to begin making interim payments *before* an appellate determination (constitutional and otherwise) of the May 23rd order," and this will result in Pepsi's "irretrievable" loss of its constitutional rights. It argues that they are entitled to a stay because this potential loss of constitutional rights constitutes irreparable harm *per se*. Pepsi cites no authority for the proposition that an appellant's allegation of constitutional injury automatically entitles him to a stay under Rule 62(c). The court must still evaluate the validity and magnitude of the alleged constitutional injury when determining the existence of irreparable harm. This determination must also be considered in light of the harm to the Fund and the public interest. *See generally Dayton Christian Schools v. Ohio Civil Rights Commission*, 604 F.Supp. 101, 104–05 (S.D.Ohio 1984).

Pepsi's request for a stay alludes to constitutional infirmities in the May 23rd order, but it never sets out the constitutional rights at issue, much less explains how the order abrogates them. Pepsi cites several instances wherein the district court enjoined the fund from collecting withdrawal liability until the employer's constitutional objections were resolved. This court followed a similar procedure. Despite the pendency of the Fund's motions for interim payments, the court did not decide these motions until *after* all of Pepsi's constitutional claims had been resolved. *See* May 8th Mem.Op. at 4–5. In addition, the court notes that at least one circuit has held that the employer has a statutory obligation to make these payments pending the resolution of its constitutional claims as well. *See Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund*, 693 F.2d 290, 298 (3d Cir.1982).

19. Some courts have suspended the statutory obligation where the employer would experience serious financial difficulty if forced to provide the Fund with interim payments prior to the resolution of its challenge to the assessment. *See, e.g., Victor Construction Co. v. Construction Laborers Pension Trust*, 2 EBC 2467 (C.D.Cal. 1982); *Stoeven Brothers, Inc. v. The California Butchers' Pension Trust Fund*, No. C–82–0558 (N.D.Cal. April 5, 1982); (Pepsi Mem.App.D); *Woodward Sand Co. v. Engineers Pension Trust*, 2 EBC 2161 (S.D.Cal.1981). However, as this court stressed in its May 23rd opinion, enforcement of Pepsi's statutory obligations under § 1399(c)(2) will not raise a threat of bankruptcy or leave Pepsi in serious financial straits. May 23rd Mem.Op. at 11. Under these circumstances, the court foresees no "irreparable harm" resulting from continued enforcement of the May 23rd order throughout the pendency of Pepsi's appeal.

20. Pepsi argues that its right to reimbursement is not as secure as the court assumes. It alleges that the Trustees may waste the Fund's assets, or grant increased benefits or past service credits, thereby dissipating the amounts Pepsi has deposited with the Fund. Aside from this hypothetical speculation on the future, Pepsi has not set forth any tangible evidence to show that it might be unable to recover the interim payments from the fund at some date in the future. Pepsi is dealing with a multibillion dollar fund which has been under close government observation since the mid-1970s. The Fund's trustees are bound by ERISA's strict standards of fiduciary duty. Under these circumstances, the court finds that Pepsi fails to demonstrate that the

fendants have failed to demonstrate that Congress' allocation of resources pending disputes over withdrawal liability produces any irreparable injury to the Pepsi controlled group.

In a similar vein, the court finds that despite Pepsi's assertion to the contrary, the requested stay *would* unduly harm the Fund and the public interest. Although Pepsi's bond purports to protect the Fund in the event that the appeal is dismissed or decided in the Fund's favor, the court finds that it cannot fully compensate the Fund for the *delay* of interim contributions required by the statute. Congress sought to avoid this delay when it enacted the MPPAA's interim payments provision. After extensive study and debate, it concluded that interruptions in the flow of contributions to multiemployer funds were causing substantial harm to the stability of these funds. The Fund has an ongoing obligation to its existing beneficiaries and participants, and the ranks of its vested participants increase daily. It needs to invest its funds to obtain the highest returns possible consistent with law and its fiduciary obligations. It is little consolation to the Fund that the bond would enable it to recover Pepsi's withdrawal liability payments at some indeterminate time in the future, when all Pepsi's appeals have been exhausted.[21]

The public interest factor in this case is closely connected to the discussion of harm to the Fund. Congress' concern for the pension rights of individual workers was the motivating factor behind the passage of the MPPAA. The increase in employer withdrawals from multiemployer plans jeopardized the employees' prospect of ever receiving his promised benefits. When an employer withdraws from a fund, this action has an immediate impact on the fund's anticipated contributions. Pepsi has not shown that the rights of pensioners—the concern that sparked the passage of the MPPAA—will not be jeopardized if employers are allowed to delay compliance with their statutory obligations until all of the employers' appeals are exhausted. In this court's view, it would be extremely difficult for an employer to demonstrate that the public interest favors a stay of interim payments of withdrawal liability.[22] Congress has already determined that the public interest in the continued stability of multiemployer pension plans mandates the commencement of interim payments, regardless of whether the employer disputes the Fund's assessment. The MPPAA sidesteps the standard procedure of delaying collection until after judgment by providing the pension funds with the use of the money before the propriety of the assessment is adjudicated. This unique procedure was implemented to prevent a serious financial crisis affecting multiemployer plans. Absent compelling reasons—which have not been presented here—this court will not upset the congressionally imposed payment of funds by issuing a stay of the May 23rd order pending its appeal.[23]

future financial stability of the Fund poses a serious threat to its ability to recover any mistaken contributions.

The court notes that Pepsi agreed to contribute to this fund in its collective bargaining agreement with the union. These orders merely enforce its contractual obligation, as amended by Congress.

21. Pepsi cites several cases in which the Fund *agreed* to a bond pending appeal. These cases have no bearing on the present motion, however. The fact that the Fund stipulated to a bond in other cases does not bind it to a similar agreement in this case. Furthermore, as the Fund correctly notes, Congress did not view the posting of a bond as an appropriate substitute for withdrawal liability in all cases. It identified only *one* situation in which an employer would be entitled to post a bond in lieu of interim payments. *See* 29 U.S.C. § 1384.

22. Pepsi's only argument with respect to the public interest factor is that "denial of a stay will defeat the public interest in assuring that pension plans do not make improper and unconstitutional assessments of withdrawal liability against employers." Pepsi Reply Mem. at 19 n. 17. Although the public interest does not favor an improper assessment, Congress has predetermined that the public interest in continued contributions to a pension plan outweighs the risk of an erroneous assessment.

23. Pepsi asserts that a stay should be issued to preserve the "status quo." Retaining the status quo in withdrawal liability cases does *not* re-

### Conclusion

For the reasons set forth above, the court denies Pepsi's motion for approval of a supersedeas bond pursuant to Rule 62(d), and its motion to stay this court's May 23rd order pending appeal.

---

quire a suspension of contributions, however. Congress has determined that interim payments *pendente lite* preserves the status quo in cases involving withdrawal liability. This "status

quo" places the parties in the same position they occupied *prior* to the employer's decision to withdraw from the fund.